**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

IN THE MATTER OF:

THE PETITION OF MOBRO MARINE, INC., as Owner of the Steel Inland Spud Barge MB 149 (Official No. 1262979), her engines, spuds, mats, tackle, apparel, equipment, and appurtenances, for Exoneration from or Limitation of Liability,

Petitioner.
_______________________________/

Case No.:

**IN ADMIRALTY**

**VERIFIED PETITION FOR EXONERATION FROM OR LIMITATION OF LIABILITY**

Petitioner MOBRO MARINE, INC. ("MOBRO" or "Petitioner"), as owner of the steel inland spud barge MB 149, Official Number 1262979, together with her engines, spuds, mats, tackle, apparel, equipment, and appurtenances (collectively, the "Vessel"), files this Verified Petition for Exoneration from or Limitation of Liability pursuant to 46 U.S.C. §§ 30501–30530 and Rule F of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and alleges as follows:

## I. NATURE OF THE ACTION

1. This is an admiralty and maritime action for exoneration from or limitation of liability brought under the Limitation of Liability Act, 46 U.S.C. §§

30501–30530 (the "Limitation Act"), and Supplemental Rule F. Petitioner seeks exoneration from, or alternatively limitation of, liability for any and all losses, damages, injuries, or claims of any kind whatsoever arising out of, occasioned by, or related to an incident that allegedly occurred aboard the Vessel on or about March 7, 2026, in Duval County, Florida (the "Incident"), while the Vessel was in the exclusive possession, command, and control of non-party Shoreline Foundation, Inc. under a written bareboat charter.

## II. JURISDICTION AND VENUE

2. This Court has original and exclusive subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1333(1), because this is a civil case of admiralty or maritime jurisdiction, and pursuant to 46 U.S.C. § 30529(a), which authorizes the owner of a vessel to bring a civil action in a district court of the United States for limitation of liability. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and Petitioner so designates it.

3. The Incident occurred aboard a vessel afloat on the navigable waters of the United States, specifically on the intracoastal waterway at or near Mike McCue Park and Boat Ramp, Jacksonville, Duval County, Florida. The claims asserted against Petitioner arise from the alleged condition of a vessel's deck and deck-mounted crane during the loading of equipment aboard the vessel by crane, activities that bear a substantial relationship to traditional maritime activity and have a potentially disruptive impact on maritime commerce.

4. Venue is proper in this District and Division under Supplemental Rule F(9) because Petitioner has been sued with respect to the claims sought to be limited in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida, which lies within the Jacksonville Division of the Middle District of Florida. In addition, Petitioner's principal place of business is in Green Cove Springs, Clay County, Florida, within the Jacksonville Division, and the Vessel is presently located in Stuart, Florida. The vessel has not been attached or arrested.

## III. PETITIONER AND THE VESSEL

5. Petitioner MOBRO Marine, Inc. is a corporation organized and existing under the laws of the State of Florida, with its principal place of business at 606 Leonard C. Taylor Parkway, Green Cove Springs, Florida 32043 (mailing address P.O. Box 986, Green Cove Springs, Florida 32043). Petitioner is engaged in the business of, among other things, owning and chartering marine equipment, including barges and cranes.

6. At all times material hereto, Petitioner was and is the sole owner of the Vessel, which is more particularly described as follows:

(a) The MB 149, a steel inland spud barge, Official Number 1262979, built in 2015, of 317 gross registered tons, measuring approximately 120 feet in length, 45 feet in breadth, and 7 feet in depth, equipped with two (2) spuds and mats, documented with the United States Coast Guard.

7. The MB 149 is a "vessel" within the meaning of 1 U.S.C. § 3 and the Limitation Act. She is a documented watercraft that is practically capable of, and is regularly used for, transportation on water, and at the time of the Incident she was afloat and in service as a working crane barge on navigable waters.

8. Petitioner is an "owner" of the Vessel within the meaning of 46 U.S.C. § 30501(2) and is entitled to the benefits of the Limitation Act and to bring this action under 46 U.S.C. § 30529 and Supplemental Rule F.

## IV. THE BAREBOAT CHARTER TO SHORELINE FOUNDATION, INC.

9. On January 26, 2026, Petitioner, as Owner, and Shoreline Foundation, Inc. ("Shoreline"), a Florida corporation with its principal place of business at 2781 SW 56th Avenue, Pembroke Park, Florida 33023, as Charterer, entered into a written Vessel Bareboat Charter Contract (the "Charter"). A true and correct copy of the Charter, together with the certificate of insurance furnished by Shoreline pursuant to the Charter, is attached hereto as **Exhibit A**.

10. Under the Charter, Petitioner chartered the Vessel, including the MB 149 with her two spuds and mats and the American 9270 crawler crane with boom, block, and ball, to Shoreline for delivery at Jacksonville, Florida in February 2026, for a term continuing month to month, at a charter hire of $27,000.00 per month plus taxes. The Vessel was delivered to Shoreline at Jacksonville, Florida on or about February 18, 2026, and the Charter was in full force and effect on March 7, 2026.

11. The Charter was a bareboat, or demise, charter. Paragraph 3 of the Charter provides that "[t]he Owner shall relinquish possession, command, and navigation to the Charterer upon delivery of the vessel." Upon delivery, Petitioner relinquished, and Shoreline assumed, full and exclusive possession, command, control, and navigation of the Vessel. From delivery through the date of the Incident and thereafter, Shoreline manned, supplied, operated, maintained, and controlled the Vessel at its own expense and by its own procurement, and directed all work performed aboard her.

12. In Paragraph 4 of the Charter, Shoreline acknowledged that it had inspected the Vessel and "found it to be in first class condition and in every respect seaworthy," and agreed that its acceptance of the Vessel constituted full performance by and compliance with all obligations and warranties of the Owner.

13. Paragraph 7 of the Charter required Shoreline to inspect the equipment immediately upon delivery and to notify Petitioner in writing within 48 hours after delivery if the equipment was not in good, safe, and serviceable condition and fit for Shoreline's use, failing which Shoreline was conclusively presumed to have accepted the equipment and to have waived any claim as to its condition and fitness. Shoreline gave no such notice.

14. Paragraph 9 of the Charter obligated Shoreline to keep the equipment "in good repair and operating condition (including lubrication) at its sole cost and expense," to perform all repairs in conformity with the manufacturer's specifications using original equipment manufacturer parts, and prohibited

Shoreline from modifying the crane or boom without Petitioner's written consent. Paragraph 8 further provided that the equipment was accepted "as is with all faults," that Petitioner gave no warranty of merchantability or fitness, and that Shoreline agreed to look solely to the manufacturer of the equipment for any claim, injury, or damage arising from its design, manufacture, use, or condition.

15. In Paragraphs 6 and 8 of the Charter, Shoreline agreed to indemnify and hold Petitioner harmless against any and all claims for bodily injury and property damage of whatsoever nature arising out of the use or operation of the Vessel, including any claim brought by Shoreline's employees or agents or any other person making a claim arising out of the use of the equipment during the term of the Charter. Notwithstanding, Paragraph 17 provides that nothing in the Charter shall be construed to deprive Petitioner of, or to limit Petitioner's right to, any statutory protection or limitation of liability.

16. From the delivery of the Vessel to Shoreline through the date of the Incident, no officer, employee, crew member, agent, or representative of Petitioner was aboard the Vessel. Petitioner did not operate, navigate, direct, supervise, or control the Vessel, the crane, or any work being performed aboard the Vessel, and Petitioner did not perform, and was not requested by Shoreline to perform, any maintenance, repair, or inspection of the Vessel during that period.

## V. THE VOYAGE AND THE INCIDENT

17. The voyage on which the claims sought to be limited arose consists of the Vessel's service under the Charter, commencing with her delivery to Shoreline

at Jacksonville, Florida on or about February 18, 2026, and concluding upon termination of the Charter and redelivery of the Vessel to Petitioner at Green Cove Springs, Florida on or about July 9, 2026. Throughout that period the Vessel was employed by Shoreline as a stationary crane barge and work platform on the navigable waters of Duval County, Florida in connection with a marine construction project being performed by Shoreline on the intracoastal waterway at or near Mike McCue Park and Boat Ramp.

18. As alleged in the State Court Complaint described below, on or about March 7, 2026, Gage Broussard ("Broussard"), an employee of Shoreline, was working aboard the Vessel in the course and scope of his employment with Shoreline as the operator of the crane. Broussard alleges that he was instructed by Shoreline to use the crane to place a pile-driving hammer and associated hydraulic power unit (the "Hammer Unit") onto the deck of the barge, and that the Hammer Unit was owned by Meever U.S.A., Inc. ("Meever") and rented by Meever to Shoreline "and/or" Petitioner.

19. Broussard further alleges that he stepped out of the crane cab to ensure that the Hammer Unit was properly placed on the deck and that, as he was returning to the crane, he slipped and fell on the deck, was rendered unconscious, and sustained injuries to his back and other parts of his body. Broussard alleges that he slipped on fluid that had accumulated on the deck, which he attributes both to motor and gearbox fluid allegedly leaking from the crane and to hydraulic fluid allegedly leaking from the Hammer Unit.

20. Petitioner denies the allegations of fault and liability asserted against it. Petitioner did not own, supply, rent, or have any interest in or control over the Hammer Unit. Petitioner had no knowledge, prior to the Incident, of any leak of fluid from the crane or from any other equipment aboard the Vessel, of any accumulation of fluid on the deck of the Vessel, or of any other allegedly unsafe condition aboard the Vessel, and Petitioner received no notice or report of any such condition from Shoreline, Broussard, Meever, or anyone else before the Incident. Any such condition, if it existed, arose after delivery of the Vessel to Shoreline and during Shoreline's exclusive possession, control, operation, and maintenance of the Vessel and the crane. Petitioner first learned of the Incident on or about May 2026.

21. The Vessel was not lost, damaged, or abandoned as a result of the Incident, no salvage or general average was incurred, and no liens have been asserted against the Vessel arising out of the Incident. The Vessel remains in substantially the same condition as she was in at the time of the Incident.

## VI. THE STATE COURT ACTION AND THE CLAIMS ASSERTED

22. On May 1, 2026, Broussard filed an action styled *Gage Broussard v. MORBO Marine, Inc. and Meever U.S.A., Inc.*, Case No. 2026-CA-003177, in the Circuit Court of the Fourth Judicial Circuit in and for Duval County, Florida (the "State Court Action"), by way of a pleading entitled "Plaintiff's Original Complaint" (the "State Court Complaint"). A true and correct copy of the State Court Complaint is attached hereto as **Exhibit B**. Although the caption of the State Court Complaint

misidentifies Petitioner as "MORBO Marine, Inc.," the body of the State Court Complaint names MOBRO Marine, Inc. and directs service upon Petitioner's registered agent; Petitioner is the entity sued.

23. The State Court Complaint asserts a single count of negligence against Petitioner. It alleges that Petitioner owned and operated the barge; that Petitioner owed Broussard a duty to maintain the crane and the barge in a reasonably safe condition and to ensure that the deck did not pose a slipping hazard; and that Petitioner breached that duty by operating the crane in a leaking condition, failing to inspect, maintain, and repair the crane, failing to inspect the deck for accumulated fluid, failing to remove or remediate accumulated fluid, and failing to warn Broussard of the condition. The State Court Complaint asserts a separate count of negligence against Meever with respect to the Hammer Unit.

24. Broussard seeks unliquidated compensatory damages from Petitioner, including past and future medical expenses, past and future loss of earnings and earning capacity, past and future pain and suffering and mental anguish, past and future impairment and disfigurement, costs, and pre- and post-judgment interest, and he demands trial by jury. The State Court Complaint alleges that the damages sought "well exceed $50,000" and are "far in excess of the minimum jurisdictional limits" of the state court, but it does not otherwise state the amount claimed. Petitioner is informed and believes that the amount of Broussard's claim, as he will assert it, will exceed the value of Petitioner's interest in the Vessel.

25. Petitioner has not been served with the State Court Complaint as of the date of the filing of this Petition. On or about May 2026, Petitioner received notice that the underlying suit was pending, however, no written notice of Broussard's claim arising out of the Incident has been received to date from Broussard or his attorney. This Petition is filed within six months after Petitioner first received written notice of a claim, as required by 46 U.S.C. § 30529(a) and Supplemental Rule F(1), and is therefore timely.

26. Other than the State Court Action, no suit, claim, or written notice of claim has been asserted against Petitioner or the Vessel arising out of the Incident. Petitioner is informed and believes, however, that Meever, Shoreline (as Broussard's employer and, upon information and belief, the party responsible for the payment of workers' compensation or Longshore and Harbor Workers' Compensation Act benefits to Broussard), Shoreline's compensation carrier, and their respective insurers may assert claims for contribution, indemnity, subrogation, or reimbursement against Petitioner arising out of the Incident. All such claims, whether presently asserted or hereafter asserted, are claims subject to limitation in this proceeding, and Petitioner seeks exoneration from or limitation of liability as to all of them.

27. No prior action or proceeding for exoneration from or limitation of liability has been commenced by Petitioner with respect to the Incident, and no other action or proceeding is pending in any court other than the State Court Action.

28. By letter dated May 21, 2026, Petitioner, through its liability insurer, tendered its defense and indemnity in the State Court Action to Shoreline and its insurers pursuant to the indemnity and additional-assured provisions of the Charter. As of the date of this Petition, Shoreline and its insurers have accepted the tender. Nothing in this Petition is intended to, or shall, waive or prejudice Petitioner's contractual or other rights against Shoreline or its insurers, all of which are expressly reserved.

## VII. VALUE OF PETITIONER'S INTEREST IN THE VESSEL AND PENDING FREIGHT

29. The value of Petitioner's interest in the Vessel and her appurtenances immediately following the Incident and at the conclusion of the voyage described above did not exceed, and does not exceed Six Hundred Six Thousand and Ninety-Six 04/100 Dollars ($606,096.04) for the MB 149 with her spuds and mats. The Vessel sustained no damage in the Incident, and her value at the end of the voyage was the same as her value at the time of the Incident. A true and correct copy of the Affidavit of Value is attached as **Exhibit C.**

30. The Vessel was under a charter and Petitioner was not itself carrying cargo or passengers for hire, and otherwise has no knowledge of any cargo or passengers for hire; Petitioner therefore alleges that there was no pending freight within the meaning of the Limitation Act.

31. 46 U.S.C. § 30524 has no application to this proceeding.

32. Contemporaneously with the filing of this Petition, and pursuant to 46 U.S.C. § 30529(b) and Supplemental Rule F(1), Petitioner is depositing with the Court, as security for the benefit of all claimants, an Ad Interim Stipulation for Value and Costs in the amount of $606,096.04, representing the value of Petitioner's interest in the Vessel and pending freight, together with interest thereon at the rate of six percent (6%) per annum from the date of the security, and the further sum of $250.00 as security for costs as required by Supplemental Rule F(1) and Section 5(e)(3) of the Middle District of Florida Admiralty and Maritime Practice Manual. The Ad Interim Stipulation for Value and Costs will be filed under separate cover. Petitioner will, if and when ordered by the Court, pay into the registry of the Court or post a bond with sufficient surety for the amount of such value and interest, and for such additional amount, if any, as the Court may fix following an appraisal pursuant to Supplemental Rule F(7).

## VIII. CLAIM FOR EXONERATION FROM LIABILITY

33. Petitioner realleges and incorporates by reference the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

34. The Incident, and any loss, damage, injury, or death resulting therefrom, was not caused or contributed to by any fault, neglect, negligence, or want of care on the part of Petitioner, the Vessel, or any person or entity for whose conduct Petitioner is or may be responsible, and was not caused or contributed to by any unseaworthiness of the Vessel or her appurtenances for which Petitioner is responsible.

35. At the time the Vessel was delivered to Shoreline under the Charter, the Vessel and the crane were tight, staunch, strong, seaworthy, properly equipped, and in all respects fit and safe for the service in which they were to be engaged, as Shoreline itself inspected, acknowledged, and accepted in Paragraphs 4 and 7 of the Charter.

36. Any accumulation of fluid on the deck of the Vessel at the time of the Incident, if any existed, and any leak of fluid from the crane or the Hammer Unit, if any existed, resulted from the acts or omissions of persons or entities other than Petitioner, for whose conduct Petitioner is not responsible, including without limitation: (a) Shoreline, which had exclusive possession, control, and operation of the Vessel and the crane; was contractually and legally responsible for maintaining, lubricating, inspecting, and repairing the crane and for keeping the deck of the Vessel in a safe condition; supervised and directed the work being performed; and was responsible for providing its employee with a safe place to work, safe equipment, and safe methods of work; (b) Meever, as the alleged owner and supplier of the Hammer Unit that allegedly leaked hydraulic fluid onto the deck; and (c) Broussard himself, whose own negligence and failure to exercise reasonable care for his own safety caused or contributed to the Incident.

37. Petitioner is therefore entitled to a decree exonerating it and the Vessel from any and all liability for any loss, damage, injury, or claim of any kind arising out of or resulting from the Incident.

## IX. ALTERNATIVE CLAIM FOR LIMITATION OF LIABILITY

38. Petitioner realleges and incorporates by reference the allegations of Paragraphs 1 through 32 above as if fully set forth herein.

39. In the alternative, and without admitting any liability, if the Vessel or Petitioner is found to be liable to any person for any loss, damage, injury, or death arising out of the Incident, which liability is expressly denied, any such loss, damage, injury, or death was done, occasioned, or incurred without the privity or knowledge of Petitioner, within the meaning of 46 U.S.C. § 30523(b).

40. Petitioner lacked privity or knowledge of any act, omission, or condition alleged to have caused the Incident for reasons including the following: (a) at the time of the Incident, the Vessel was under a bareboat charter and Petitioner had relinquished possession, command, control, and navigation of the Vessel to Shoreline; (b) no officer, managing agent, employee, or representative of Petitioner was aboard the Vessel or present at the worksite at the time of the Incident or at any time during the Charter prior to the Incident; (c) Petitioner had no knowledge, actual or constructive, of any leak of fluid from the crane or any other equipment, of any accumulation of fluid on the deck, or of any other allegedly unsafe condition aboard the Vessel, and received no report or notice of any such condition before the Incident; (d) Petitioner had no opportunity or ability to inspect the deck, remediate any condition, or warn Broussard, because those functions were within the exclusive possession and control of Shoreline; (e) Petitioner exercised reasonable care to deliver the Vessel and the crane to

Shoreline in a seaworthy and safe condition, as Shoreline acknowledged; and (f) Petitioner exercised reasonable care by contractually requiring Shoreline to inspect the equipment upon delivery, to keep the crane in good repair and operating condition including lubrication, to perform all repairs to manufacturer's specifications, and to notify Petitioner of any deficiency. Any negligence or unseaworthy condition alleged to have caused the Incident, if it existed, arose during and as a result of Shoreline's exclusive operation, use, and maintenance of the Vessel, and was not within the privity or knowledge of Petitioner.

41. Petitioner is therefore entitled, pursuant to 46 U.S.C. § 30523, to limit its liability, if any, to the amount or value of its interest in the Vessel and her pending freight at the conclusion of the voyage on which the Incident occurred, which amount does not exceed $606,096.04, and to have all claims arising out of the Incident adjudicated in this proceeding and the limitation fund apportioned pro rata among any claimants as provided by 46 U.S.C. § 30525 and Supplemental Rule F(8).

42. Pursuant to 46 U.S.C. § 30529(c) and Supplemental Rule F(3), upon Petitioner's compliance with Supplemental Rule F(1), all claims and proceedings against Petitioner or the Vessel arising out of the Incident, including the State Court Action insofar as it is asserted against Petitioner, must cease, and Petitioner is entitled to an order of this Court restraining the further prosecution of the State Court Action against Petitioner and the commencement or prosecution of any

other suit, action, or proceeding against Petitioner or the Vessel with respect to any claim arising out of the Incident, except in this proceeding.

## X. RESERVATION OF RIGHTS AND DEFENSES

43. Petitioner expressly reserves, and does not waive, all rights, claims, and defenses available to it, including without limitation: (a) the right to contest liability to Broussard and to any other claimant, and the amount of any damages claimed; (b) all defenses available under the general maritime law and any applicable statute, including comparative fault, failure to mitigate, and the absence of any duty owed by a vessel owner not in possession or control of the vessel; (c) all rights of contractual defense, indemnity, hold-harmless, and additional-assured coverage against Shoreline and its insurers under the Charter and the insurance policies procured thereunder; (d) all rights of contribution and indemnity, whether contractual, at law, or under the general maritime law, against Meever, Shoreline, and any other person or entity whose fault caused or contributed to the Incident; and (e) the right to amend this Petition as further information becomes available. The filing of this Petition is not, and shall not be construed as, an admission of any fact alleged by any claimant or of any liability on the part of Petitioner or the Vessel.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner MOBRO Marine, Inc. respectfully prays that this Court:

A. Approve the Ad Interim Stipulation for Value and Costs filed herewith as adequate security under 46 U.S.C. § 30529(b) and Supplemental Rule F(1) for the amount or value of Petitioner's interest in the Vessel and pending freight, with interest at six percent (6%) per annum from the date of the security, and for costs, and, if required, order that Petitioner pay into the registry of the Court or post a bond in such amount as the Court may fix upon appraisal pursuant to Supplemental Rule F(7);

B. Issue a Notice, pursuant to Supplemental Rule F(4), to all persons, firms, and entities asserting claims for any loss, damage, injury, or death arising out of or resulting from the Incident, admonishing them to file their respective claims with the Clerk of this Court and to serve on Petitioner's counsel a copy thereof on or before a date to be named in the Notice, which date shall be not less than thirty (30) days after the issuance of the Notice, and to answer the allegations of this Petition, and further directing that the Notice be published in a newspaper of general circulation in Duval County, Florida, once a week for four (4) successive weeks prior to the date fixed for the filing of claims, and that Petitioner mail a copy of the Notice to every person known to have made any claim against the Vessel or Petitioner arising out of the Incident, all in accordance with Supplemental Rule F(4) and

Sections 1(e) and 6(a) of the Middle District of Florida Admiralty and Maritime Practice Manual;

C. Enter an order, pursuant to 46 U.S.C. § 30529(c) and Supplemental Rule F(3), enjoining and restraining the further prosecution of the State Court Action as against Petitioner, and enjoining and restraining the commencement or prosecution of any and all other suits, actions, or legal proceedings of any nature or description whatsoever in any court, tribunal, or forum against Petitioner, its insurers, or the Vessel, or their property, arising out of or in connection with the Incident, except in this proceeding;

D. Enter a default against any and all persons, firms, and entities who fail to file a claim and answer in this proceeding within the time fixed by the Court, and forever bar them from asserting any claim against Petitioner or the Vessel arising out of the Incident;

E. Adjudge and decree that Petitioner and the Vessel are not liable to any extent for any loss, damage, injury, death, or claim of any kind arising out of or resulting from the Incident, and that Petitioner is exonerated from all such liability;

F. In the alternative, if Petitioner or the Vessel is found liable to any extent, adjudge and decree that such liability is limited to the amount or value of Petitioner's interest in the Vessel and her pending freight at the conclusion of the voyage, not exceeding $606,096.04, plus

interest as provided by law; that all claims be adjudicated in this Court and the limitation fund be apportioned pro rata among the claimants whose claims are established; and that Petitioner be discharged from any further liability upon payment of the fund; and

G. Grant Petitioner such other and further relief as the Court deems just and proper.

## DESIGNATION UNDER FED. R. CIV. P. 9(h)

Petitioner designates this action as an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Supplemental Rule F, and requests that it be tried to the Court without a jury.

Dated: September 4, 2026

***Respectfully Submitted,***

**SIOLI ALEXANDER PINO**
*Attorneys for Petitioner*
9155 S. Dadeland Blvd.
Suite 1600
Miami, Florida 33156
Tel: (305) 428-2470
Fax: (305) 428-2471

By: */s/ Rolando O. Martinez*
**ROLANDO O. MARTINEZ**
Florida Bar No.: 1024766
E-mail: rmartinez@siolilaw.com

## VERIFICATION

I, Daniel Widergren, declare as follows:

1. I am the Chief Financial Officer of Petitioner MOBRO Marine, Inc., and I am authorized by Petitioner to make this Verification on its behalf. I executed the Vessel Bareboat Charter Contract dated January 26, 2026 on behalf of Petitioner and am familiar with the Vessel, the Charter, and the matters set forth in the foregoing Verified Petition for Exoneration from or Limitation of Liability.

2. I have read the foregoing Verified Petition and know the contents thereof. The facts stated therein are true and correct to the best of my own knowledge, except as to those matters alleged upon information and belief, and as to those matters I believe them to be true. The sources of my knowledge and the grounds for my information and belief are my personal knowledge as an officer of Petitioner, my review of Petitioner's business records, including the Charter Agreement, Affidavit of Value with the Condition and Valuation Survey, and my review of the State Court Complaint and correspondence relating to the claim.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on 4 day of September, 2026, at Green Cove Springs, Florida.

[signature]

Daniel Widergren
Chief Financial Officer
MOBRO Marine, Inc.